Filed 8/26/21  P. v. Gallow CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>WHITNEY GALLOW,<br><br>Defendant and Appellant. | B300252<br><br>(Los Angeles County<br>Super. Ct. No. BA091853) |

APPEAL from an order of the Superior Court of Los Angeles County, Laura F. Priver, Judge.  Affirmed.

John Lanahan, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Amanda V. Lopez and Nima Razfar, Deputy Attorneys General, for Plaintiff and Respondent.

————————————————

Defendant and appellant Whitney Gallow challenges the trial court's summary denial of his petition under Penal Code[1] section 1170.95 for resentencing on his murder convictions. He argues that the trial court erred by denying his petition without appointing counsel to represent him, and by finding that he was the actual killer and was therefore ineligible for resentencing. Because the record of conviction shows as a matter of law that Gallow is ineligible, we hold that the failure to appoint counsel was harmless error. On that basis, we affirm.

## FACTUAL AND PROCEDURAL SUMMARY

In 1994, a jury convicted Gallow of two counts of murder (§ 187, subd. (a)), one count of attempted murder (§§ 187, 664), and one count of robbery (§ 211). The jury found true felony-murder (§ 190.2, subd. (a)(17)) and multiple murder (§ 190.2, subd. (a)(3)) special circumstance allegations as to both counts of murder, and found that Gallow personally used a handgun in the commission of the murders (§ 12022.5, subd. (a)), but the jury rejected an allegation that Gallow personally inflicted great bodily injury in the commission of the attempted murder (§ 12022.7, subd. (a)). The trial court sentenced Gallow to two consecutive terms of life in prison without the possibility of parole for the murders, plus an additional term of life with the possibility of parole for attempted murder, plus 15 more years for three firearm enhancements. In Gallow's direct appeal, we struck two of the firearm enhancements but otherwise affirmed the judgment. (*People v. Gallow* (Sep. 20, 1996, B088383) [nonpub. opn.].)

---

[1] Subsequent statutory references are to the Penal Code.

The following summary of the facts of the case is drawn from our unpublished opinion in Gallow's direct appeal:  In August 1992, Gallow asked an acquaintance, Collin McDonald, to set up a deal for Gallow to purchase three kilograms of cocaine. On the evening of August 11, Gallow and his friend James Escandero went to McDonald's house with more than $50,000 in cash, which McDonald counted.  McDonald contacted his associate Adrian Ponce and arranged for the deal to take place the next day at McDonald's house.

On August 12, Gallow and Escandero arrived at McDonald's house with a bag, which McDonald presumed contained the money to buy the cocaine.  Ponce arrived an hour later with his friend Enrique Urzua, who was carrying a bag with the cocaine.  Ponce and Urzua entered the house while Ponce's girlfriend, Angela Rodriguez, remained outside in Urzua's car.

McDonald took a kilogram package of cocaine from the bag and showed it to Gallow and Escandero.  He asked to see the money again, but Escandero pulled his bag away and smiled. McDonald felt uneasy and said he did not want to go through with the deal.  All the visitors drove away, but Gallow and Escandero caught up with Ponce and Urzua and convinced them to come back to McDonald's house.  They convinced McDonald that he was overreacting, and McDonald allowed the others into the house.  As Gallow entered the house, he said, "Come on.  Let's do this," and took the bag from Escandero.

Inside the house, Escandero asked to use the restroom and began walking in that direction.  McDonald told Gallow he wanted to see the money.  Gallow reached into the bag, pulled out a gun, and began shooting.  McDonald was shot four times but managed to escape out the front door.  As he was leaving,

he heard "a lot" more gunshots and saw Escandero through a window holding a gun.

Gallow and Escandero came out the front door. One of them pursued McDonald, and the other came toward Ponce's girlfriend Rodriguez, who drove away. McDonald eluded his pursuers and hid in a neighbor's house until police arrived.

Police discovered Ponce in the family room and Urzua in the living room of the house, both dead from close-range gunshot wounds to the head. Ponce had been shot with a .32 caliber weapon and Urzua with a nine millimeter Luger.

In the ambulance on the way to the hospital, McDonald identified Gallow as the person who had shot him, though he later told police Gallow was not present, and he did not disclose that he had intended to sell cocaine to his assailants. Police searched McDonald's house and found three spent nine millimeter shell casings that were determined to have been fired from a Luger, as well as an empty bag matching the description of the one that had contained the cocaine.

• • •

In 2018, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437), which abolished the natural and probable consequences doctrine in cases of murder, and limited the application of the felony-murder doctrine. (See *People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*).) Under the new law, a conviction for felony murder requires proof that the defendant was either the actual killer, acted with the intent to kill, or "was a major participant in the underlying felony and acted with reckless indifference to human life." (§ 189, subd. (e)(3).) The legislation also enacted section 1170.95, which established a procedure for vacating

4

murder convictions for defendants who could no longer be convicted of murder because of the changes in the law and resentencing those who were so convicted.  (Stats. 2018, ch. 1015, § 4, pp. 6675–6677.)

Gallow filed a petition for resentencing on May 23, 2019. The trial court did not appoint counsel to represent Gallow, and summarily denied the petition on the ground that Gallow actually killed both victims and was the only shooter in the case.

## DISCUSSION

### A.    *Background on Senate Bill No. 1437*

Senate Bill No. 1437 includes both prospective and retrospective provisions.  Prospectively, the law amended section 188 to provide that "[e]xcept as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime."  (§ 188, subd. (a)(3).)  The effect of this amendment is to "eliminate[ ] natural and probable consequences liability for first and second degree murder."  (*Gentile*, *supra*, 10 Cal.5th at p. 849.)  In addition, Senate Bill No. 1437 enacted section 189, subdivision (e), which restricted felony-murder liability to cases in which the defendant was the actual killer, acted with the intent to kill, or was a major participant in the underlying felony and acted with reckless indifference to human life. (See *Gentile*, *supra*, at pp. 842–843.)

The retroactive component of Senate Bill No. 1437 is codified in section 1170.95.  (See *Gentile*, *supra*, 10 Cal.5th at p. 853 ["the Legislature intended section 1170.95 to be the exclusive avenue for retroactive relief under Senate Bill

[No.] 1437"].)  This section allows a defendant "convicted of felony murder or murder under a natural and probable consequences theory [to] file a petition" for resentencing under the new law.  (§ 1170.95, subd. (a).)  To be eligible for resentencing, a defendant must show that he "could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective" as a part of Senate Bill No. 1437.  (§ 1170.95, subd. (a)(3).)

The first step for a defendant to obtain relief under section 1170.95 is to file a declaration affirming that he is eligible for resentencing under the new law.  (See § 1170.95, subd. (b)(1).)  The trial court reviews the petition, and if the petition is incomplete, "the court may deny the petition without prejudice to the filing of another petition and advise the petitioner that the matter cannot be considered without the missing information."  (§ 1170.95, subd. (b)(2).)

If the defendant's petition is facially sufficient, the trial court "shall appoint counsel to represent the petitioner."  (§ 1170.95, subd. (c).)  The prosecutor must file a response within 60 days of service of the petition, and the petitioner may file a reply.  (*Ibid.*)  At this stage, the trial court must determine whether the petitioner has made a prima facie case for relief, under a standard of review "analogous" to the "prima facie inquiry in habeas corpus proceedings."  (*People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*).)[2]  In this review, " ' "the court takes

---

[2] After the parties had filed their briefs in this case, the Supreme Court released its opinion in *Lewis* establishing the procedure for courts to follow in determining whether a defendant had made a prima facie case for resentencing under

6

petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause." '  [Citations.]  '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citations.]  'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Ibid.*)

As part of its review, the court may consult the record of conviction in the case, including any prior appellate opinions, subject to the caveat that "the probative value of an appellate opinion is case specific, and 'it is certainly correct that an appellate opinion might not supply all answers.' " (*Lewis*, *supra*, 11 Cal.5th at p. 972.)  The "trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'  ([*People v.*] *Drayton* [(2020)] 47 Cal.App.5th [965,] 980 . . .)" (*Lewis*, *supra*, 11 Cal.5th at p. 972) in recognition of the fact that "the 'prima facie bar was intentionally and correctly set very low.' " (*Ibid.*)

If the trial court determines that the defendant has met this burden, "the court shall issue an order to show cause." (§ 1170.95, subd. (c).)  If the court issues an order to show cause, it must hold a hearing within 60 days to determine whether to vacate the murder conviction.  (§ 1170.95, subd. (d)(1).)  At this final stage of the proceeding, the prosecution has the burden

section 1170.95.  We allowed the parties to file supplemental briefs to explain how, if at all, *Lewis* affects this case.

7

of proving "beyond a reasonable doubt[ ] that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3).)

### B. *The Trial Court's Error in Denying the Petition without Appointing Counsel Was Harmless*

Gallow is correct that the trial court erred by denying his petition without appointing counsel to represent him. (See *Lewis*, *supra*, 11 Cal.5th at pp. 960–970 [trial court must appoint counsel in all cases where a petition is facially sufficient].) Gallow is also correct that the trial court misstated the record when it described him as the only shooter in the case. This is not the end of our inquiry, however. The failure to appoint counsel in a proceeding under section 1170.95 is an error of state statutory law only, and is not a violation of the defendant's constitutional rights. (*Lewis*, *supra*, 11 Cal.5th at pp. 972–973.) We therefore review for harmless error under the *Watson*[3] standard, under which the defendant "must . . . 'demonstrate there is a reasonable probability that in the absence of the error he . . . would have obtained a more favorable result.' " (*Id.* at p. 974.) This means he " 'has the burden of showing "it is reasonably probable that if [he or she] had been afforded assistance of counsel his [or her] petition would not have been summarily denied without an evidentiary hearing." ' " (*Ibid.*)

Gallow has failed to meet this burden. In order to find the felony-murder special circumstance true, the jury must have found that Gallow either was the actual killer, that he was not the actual killer but acted with the intent to kill in aiding, abetting, soliciting, or assisting in the murder, or, at a minimum, that he was a major participant in the felony and acted with

---

[3] *People v. Watson* (1956) 46 Cal.2d 818.

8

reckless indifference to human life.[4]  This is the same finding required for a conviction of felony murder under the newly amended section 189.  (See § 189, subd. (e)(3).)  He is therefore ineligible for resentencing as a matter of law because he cannot show that he "could not be convicted of first or second degree

---

[4] The murders in this case postdated the approval of Proposition 115, which amended section 190.2 to allow for felony-murder special circumstance findings where the defendant was a major participant in the felony and acted with reckless indifference to human life.  (See Prop. 115, § 10, as approved by voters, Primary Elec. (June 5, 1990).)  In addition to the felony-murder special circumstance, the jury in this case also found true a multiple-murder special circumstance.  (See § 190.2, subd. (a)(3).)  Unlike a felony-murder special circumstance, a multiple-murder special circumstance does not allow for a finding that the defendant was a major participant who acted with reckless indifference to human life; instead, it requires either that the defendant was the actual killer, or that he acted with intent to kill in aiding and abetting the murders.  (*People v. Nunez and Satele* (2013) 57 Cal.4th 1, 45.)  This was the case when Gallow committed the murders and when his trial took place.  (See *People v. Hardy* (1992) 2 Cal.4th 86, 192; *People v. Anderson* (1987) 43 Cal.3d 1104, 1149–1150.)  Thus, the multiple-murder special circumstance finding would imply that the jury found either that Gallow was the actual killer or aided and abetted the murder.  In either case, he would be ineligible for resentencing under section 1170.95.  (See §§ 1170.95, subd. (a)(2), 189, subd. (e).)  We decline to rely on the multiple-murder special circumstance finding as a separate and independent basis for affirming the trial court's denial of Gallow's petition, however, because we cannot conclude from the record that the jury was instructed correctly as to this aspect of the multiple-murder special circumstance.

9

murder because of changes to Section 188 or 189 made effective" in Senate Bill No. 1437.  (§ 1170.95, subd. (a)(3).)

Gallow disagrees with this conclusion.  He argues that the jury's special circumstance finding does not preclude him from relief under section 1170.95 because, in the years following his conviction, the Supreme Court clarified the definition of major participation and reckless indifference to human life in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).  Because no court has considered whether he was a major participant who acted with reckless indifference under the *Banks*/*Clark* standard, he contends that the trial court could not have found as a matter of law that he was ineligible for resentencing.

Within the past year, more than a dozen published opinions in the Court of Appeal have considered this question, and have reached divergent conclusions.  We have addressed the issue ourselves three times in *People v. Galvan* (2020) 52 Cal.App.5th 1134, review granted October 14, 2020, S264284 (*Galvan*), *People v. Murillo* (2020) 54 Cal.App.5th 160, review granted November 18, 2020, S264978 (*Murillo*), and *People v. Allison* (2020) 55 Cal.App.5th 449 (*Allison*).  In all three cases, we concluded that a defendant with a pre-*Banks*/*Clark* felony-murder special circumstance finding is ineligible for resentencing under section 1170.95, and that the trial court did not err by summarily denying a defendant's petition on that basis.  Our colleagues in Division Two reached the same conclusion in *People v. Nunez* (2020) 57 Cal.App.5th 78, review granted January 13, 2021, S265918, as did Divisions One and Two of the Fourth Appellate District, respectively, in *People v. Gomez* (2020) 52 Cal.App.5th 1, review granted October 14, 2020, S264033, and *People v. Jones*

(2020) 56 Cal.App.5th 474, review granted January 27, 2021, S265854, and most recently, the Fifth Appellate District, in *People v. Simmons* (2021) 65 Cal.App.5th 739.  On the other hand, our colleagues in Division Five of this district disagreed and held in *People v. Torres* (2020) 46 Cal.App.5th 1168, review granted June 24, 2020, S262011, abrogated on another ground by *Lewis*, *supra*, 11 Cal.5th at pp. 963−968, *People v. Smith* (2020) 49 Cal.App.5th 85, review granted July 22, 2020, S262835, and *People v. York* (2020) 54 Cal.App.5th 250, review granted November 18, 2020, S264954, that a pre-*Banks*/*Clark* felony-murder special circumstance finding does not disqualify a defendant from resentencing under section 1170.95.  In *People v. Harris* (2021) 60 Cal.App.5th 939, review granted April 28, 2021, S267802, a panel in Division Seven reached the same conclusion, as did the First Appellate District in *People v. Secrease* (2021) 63 Cal.App.5th 231, review granted June 30, 2021, S268862, the Sixth Appellate District in *People v. Pineda* (2021) 66 Cal.App.5th 792, and the Fourth Appellate District, Division Three in *People v. Gonzalez* (2021) 65 Cal.App.5th 420, and Division One in *People v. Arias* (2021) 66 Cal.App.5th 987.

There is no need to repeat arguments that have been thoroughly addressed in the above opinions.  We stand by our analysis in *Galvan*, *Murillo*, and *Allison*, and on that basis we hold that Gallow is unable to make a prima facie case for relief under section 1170.95.  The trial court's error in finding that Gallow was the only shooter is irrelevant.  Even if he was not the actual killer, the felony-murder special circumstance finding renders him ineligible for relief as a matter of law under section 1170.95.  Because Gallow has not shown that " ' "it is reasonably probable that if [he . . . ] had been afforded assistance

11

of counsel his . . . petition would not have been summarily denied without an evidentiary hearing" ' " (*Lewis*, *supra*, 11 Cal.5th at p. 974), the error in prematurely denying his petition was harmless.

This does not leave Gallow without any means of challenging the validity of the special circumstance finding, however.  As we noted in *Galvan*, a defendant with a pre-*Banks*/*Clark* special circumstance finding may challenge the sufficiency of the evidence for the special circumstance by means of a habeas corpus petition.  (*Galvan*, *supra*, 52 Cal.App.5th at p. 1141, review granted; *In re Scoggins* (2020) 9 Cal.5th 667, 673−674.)

## DISPOSITION

The trial court's order denying the petition for resentencing is affirmed.

NOT TO BE PUBLISHED.


ROTHSCHILD, P. J.

We concur:



BENDIX, J.



CRANDALL, J.*

---

\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.